**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2218-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DARRYL DENMARK, a/k/a
DARREL DENMARK,

     Defendant-Appellant.

_____

Submitted April 3, 2019 – Decided June 11, 2019

Before Judges Alvarez and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 09-06-1125.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel; Alison Stanton Perrone, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Darryl Denmark appeals from the February 14, 2017 order denying his application for post-conviction relief (PCR), and the August 31, 2017 order denying his motion for reconsideration. We affirm.

Tried by a jury, defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (a)(2); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree possession of a weapon without a permit, N.J.S.A. 2C:39-5(b); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b). On May 3, 2012, defendant was sentenced to an aggregate term of forty years imprisonment subject to thirty-five years of parole ineligibility.

Relevant to this PCR appeal, the direct appeal addressed defendant's challenge to the identification process the authorities employed with the principal eyewitness. See State v. Denmark, No. A-1584-12 (App. Div. Oct. 27, 2014) (slip op. at 1-2). As we said in that opinion, the eyewitness was acquainted with defendant, whom he referred to as "D," and knew the mother of defendant's child, who coincidentally posted bail for defendant. See id. at 6. The eyewitness knew "the shooter's nickname, had known him since childhood, gave a physical description of the shooter, and told the detectives that the shooter was the father of [a] one-year-old son." Id. at 7-8. Furthermore, the eyewitness's

reluctance to identify the shooter arose from his fear of retribution because of defendant's gang involvement, not because of any hesitancy regarding identity. Id. at 6, 8.

We remanded solely for the purpose of corrections to the judgment of conviction regarding parole ineligibility and merger. Id. at 22. The Supreme Court denied defendant's petition for certification. State v. Denmark, 221 N.J. 220 (2015).

Also relevant to this appeal, is the fact that after the State rested, defendant engaged in a colloquy with his attorney under oath as follows. Counsel asked:

> [Counsel]: [Do you know] that you have a constitutional right to testify?
>
> [Defendant]: Yes. Yes.
>
> [Counsel]: And I've discussed that with you -- your right. Correct?
>
> [Defendant]: Yes.
>
> [Counsel]: And [co-counsel] has discussed that with you. Correct?
>
> [Defendant]: Yes.
>
> [Counsel]: And we discussed that with you not only here today, but on a number of prior occasions. Correct?
>
> [Defendant]: Yes.

3

[Counsel]: And you understand that the right to testify or not to testify is yours, and yours alone. Correct?

[Defendant]: Yes.

[Counsel]: And you're not under the influence of any substances today?

[Defendant]: No.

[Counsel]: No -- and have you had time to think about whether or not you want to take the witness stand?

[Defendant]: Yes.

[Counsel]: And what is your decision?

[Defendant]: No. I'm not going to take the stand.

. . . .

[Counsel]: And has anybody forced you to make this decision?

[Defendant]: No.

[Counsel]: Is this decision entirely your own?

[Defendant]: Yes.

[Counsel]: Did you make this decision after hearing my opinion and [co-counsel]'s opinion, as well as considering whatever opinions that you may have consulted?

[Defendant]: Yes.

[Counsel]: And -- and, once again, no one has coerced you to make this decision. Right?

[Defendant]: No.

During the trial, the State presented testimony by an expert in forensic pathology. The doctor who actually performed the autopsy died prior to trial, therefore the State's witness testified about the autopsy from his own independent review of the report, materials, and photographs. That expert agreed that the victim died from three gunshot wounds.

The Law Division judge who denied the PCR petition did so after an evidentiary hearing during which defendant called a forensic psychologist. He testified extensively regarding the unreliability of eyewitness identifications, based on his experiences and review of the literature. His testimony, albeit extensive, was general in nature.

Defendant also testified during the evidentiary hearing. He admitted that he had known the eyewitness since childhood, knew the eyewitness's nickname, and was acquainted with his mother.

Defendant's trial attorney was cross-examined about the eyewitness identification. He said that it was his trial strategy, based on discussions with defendant, to establish that the eyewitness could not have seen the shooting

A-2218-17T3

because he was not in the area. Counsel indicated that defendant had told him, when the two reviewed discovery together, that the eyewitness was not at the scene. The trial attorney also said that defendant, in the words of the Law Division judge, "didn't hide the fact that he was on the scene and that he had had a dispute with the . . . victim in this particular case and that the victim had had some kind of, you know, romantic relationship with . . . the mother of [defendant's] child." Counsel also indicated that the eyewitness refused to speak to his investigator in advance of trial.

Counsel testified he had never used an identification expert at trial. He would not have done so in this case because the issue was not that the eyewitness was mistaken, but that the eyewitness was simply not present. Counsel also said that he attempted to put the most reasonable construction on the facts as was possible because "I have to stand in front of fourteen people and with a straight face, tell them a . . . story that is believable, more believable than the State's theory . . . ." He claimed he presented alternative defenses only where it would not cause him to lose credibility before a jury.

The judge relied heavily on counsel's testimony that since defendant could not credibly dispute his acquaintance with the eyewitness, the strategy would be to demonstrate that the eyewitness was not present at the scene. Counsel also

6

had inconsistencies regarding the trajectory of the bullets that he planned to argue created doubt about the eyewitness's presence, and therefore doubt about his credibility. The manner in which counsel presented the identification issue to the jury was based entirely on placing as favorable a slant as possible on irrefutable facts. This established that counsel's decision not to challenge identification was sound trial strategy.

The judge also noted that the trial record did not support defendant's claim that he had no adequate opportunity to discuss his right to testify with counsel. He further observed that even if counsel had advised defendant that he should not take the stand, "this statement does not violate [defendant's] constitutional rights. It qualifies as advice from experienced trial counsel."

Addressing the issue of the pathologist's testimony, the judge discussed applicable precedent, such as State v. Roach, 219 N.J. 58, 79 (2014), which supports the common sense principle that where the individual who performed scientific testing is unavailable, an expert familiar with those testing modalities may testify without violating a defendant's right to confrontation. So long as the reviewer is qualified, and not merely parroting a report, no violation of defendant's right to confrontation has occurred. The doctor who testified at trial had "personally reviewed the original autopsy report, verified its conclusions,

7

and ha[d] made an independent conclusion based on such review. [Defendant's] constitutional right to confront witnesses against him was therefore not violated."

The judge gave an equally thorough and cogent explanation of why reconsideration would be inappropriate. The proofs defendant presented simply did not overcome the presumption that counsel's representation was objectively reasonable. Measuring counsel's performance "under prevailing professional norms[,]"[1] it was clear that counsel was not ineffective. Counsel faced a difficult set of facts. Counsel nonetheless filed motions to suppress the identification and obtain a <u>Wade</u> hearing, both of which were ultimately denied. Counsel requested, and the judge gave, an eyewitness identification jury charge at trial. Furthermore, "that he did not also call an identification expert was reasonable in light of what other defense attorneys were doing at the time."

Now on appeal, defendant raises the following points:

> POINT I
> THE INADEQUATE REPRESENTATION THAT PETITIONER RECEIVED AT TRIAL FELL BELOW AN OBJECTIVELY REASONABLE STANDARD, THUS VIOLATING HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES AND NEW JERSEY CONSTITUTIONS INSOFAR AS TRIAL COUNSEL FAILED TO

---

[1] <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).

PRESENT THE TESTIMONY OF AN EYEWITNESS IDENTIFICATION EXPERT.

POINT II
TRIAL COUNSEL FAILED TO PROPERLY AND ADEQUATELY DISCUSS [DEFENDANT]'S RIGHT TO TESTIFY AT TRIAL.

POINT III
TRIAL COUNSEL FAILED TO PROPERLY AND ADEQUATELY CONFRONT THE MEDICAL [EXAMINER] WHO TESTIFIED AT TRIAL, THEREBY EFFECTIVELY WAIVING [DEFENDANT]'S RIGHT TO MEANINGFUL AND ADEQUATE CONFRONTATION.

We are satisfied that based on Judge John A. Young, Jr.'s comprehensive written decisions both on the motion for PCR after the evidentiary hearing, and the motion for reconsideration, this appeal must be denied because none of the contentions had merit. Indeed, they lack sufficient merit, in light of the record developed at the evidentiary hearing, to warrant much discussion in a written decision. R. 2:11-3(e)(2).

Had counsel presented an identification expert, such testimony would have been irrelevant, given the eyewitness's familiarity with defendant. Defendant discussed his right to testify with counsel, as defendant was questioned about it on the record after the State rested. Finally, the confrontation clause was not violated because the expert who testified had done

far more than merely parrot the conclusions the original pathologist reached in his report. He had examined the underlying documents, including slides and photographs, and was thus able to independently verify each and every conclusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2218-17T3